IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Dawn Y., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Martin J. O'Malley, ) <br> Commissioner of Social Security,[1] ) <br> ) <br> Defendant. ) | Case No.: 21-cv-50320 <br><br> Magistrate Judge Margaret J. Schneider |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Dawn Y., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

On July 18, 2013, Dawn Y. ("Plaintiff") filed for Title II disability and disability insurance benefits alleging a disability beginning on January 17, 2010. R. 21. Her application was denied initially, upon reconsideration, and by ALJ decision dated May 27, 2016. R. 21-36. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 6-9. Plaintiff sought judicial review and then-Magistrate Judge Johnston remanded the decision to the Appeals Council. R. 1123-1134. The Appeals Council then remanded the case to the Commissioner of Social Security for further administrative proceedings. R. 1121.

On remand, the ALJ held a telephonic hearing on May 4, 2021. R. 1003. Plaintiff, represented by counsel, appeared and testified. *Id*. Dr. Ronald Kendrick, an impartial medical expert and Kari Seaver-Ready, an impartial vocational expert ("VE"), also appeared and testified. *Id.* On May 19, 2021, the ALJ issued a written opinion denying Plaintiff's claims for disability and disability insurance benefits. R. 1003-1024. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [9]. Now before the Court are Plaintiff's opening brief [18], the Commissioner's response brief [23], and Plaintiff's reply brief [27].

**B. The ALJ's Decision**

---

[1] Martin J. O'Malley has been substituted for Kilolo Kijakazi. Fed. R. Civ. P. 25(d).

1

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 17, 2010 through the last insured date of December 31, 2015. R. 1006. At step two, the ALJ found that Plaintiff had the following severe impairments: morbid obesity; history of bilateral knee surgeries; history of lumbar spine laminectomy with decompression; left greater trochanteric bursitis; vertigo/headaches; asthma; and right shoulder impingement with bursitis status post surgery. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 1008.

Before step four, the ALJ found that through the date last insured, Plaintiff had a residual functional capacity ("RFC") to perform sedentary work but with the following limitations: never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance; avoid concentrated exposure to pulmonary irritants; avoid concentrated exposure to hazards, including dangerous moving machinery and unprotected heights; occasionally reach overhead with the dominant right upper extremity and frequently reach in all other directions with the right upper extremity. R. 1010-1022. At step four, the ALJ found that Plaintiff could perform past relevant work as a caseworker. R. 27. Based on her conclusion that Plaintiff could perform past relevant work, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from January 17, 2010, through the last insured date of December 31, 2015, and the ALJ did not proceed to step five. *See* 20 C.F.R. § 416.920. R. 1022-1024.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted). *See also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the

evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## DISCUSSION

Plaintiff argues that the ALJ erred in evaluating (1) Plaintiff's subjective symptoms, (2) the impartial medical expert's opinion, and (3) Plaintiff's fibromyalgia. As detailed below, the Court finds that the ALJ's analysis of Plaintiff's subjective symptoms and Plaintiff's fibromyalgia was supported by substantial evidence and that the ALJ reasonably weighed the impartial medical expert's opinion.

ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p. First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Next, the ALJ must evaluate the intensity and persistence of an individual's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id*.

In this case, the ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, Plaintiff's statements about the intensity and persistence of her pain were inconsistent with evidence in the record. The ALJ came to this conclusion after noting that Plaintiff often went months in between appointments with her pain specialist, Dr. Dahlberg, including a nineteen-month gap between February 2011 and September 2012. R. 1016. At the hearing, the impartial medical expert testified that if someone is not going to the doctor for pain relief, that person must either not be experiencing pain, "be finding other ways to relieve it," or lack "the wherewithal or the cash to afford to see the doctor." R. 1050-1051. The ALJ asked Plaintiff at the hearing why she did not see her pain specialist for long stretches of time. R. 1054. Plaintiff first testified that she did not have the money to see a specialist at those times and further explained that because she has so many concurrent issues, she could not always prioritize seeing the pain specialist. R. 1055. However, Plaintiff went on to testify that she had insurance throughout the periods of her treatment gaps, meaning she did have insurance to seek treatment. R. 1017, 1059-1060. Additionally, although she testified that Dr. Dahlberg's treatments provided only 10% pain relief, she could not explain why she never sought pain treatment elsewhere. R. 1017, 1059-1060. Ultimately, the ALJ determined that these "treatment gaps," when considered with other evidence, including the results of Plaintiff's clinical examinations and Plaintiff's testimony about her ability to perform daily activities, "suggest that [Plaintiff's] symptoms are not as limiting as she has alleged." R. 1017. *See* SSR 16-3p ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . [the ALJ] may find the alleged intensity and persistence of an individual's symptoms inconsistent with the overall evidence of record.").

Plaintiff argues that the ALJ did not build a logical bridge from the evidence to the conclusion that Plaintiff's symptoms were not as limiting as alleged. Although Plaintiff concedes that she often went months between visits to her pain specialist, she contends that the ALJ drew improper conclusions from these "treatment gaps." She claims that she did not visit her pain

3

specialist for months at a time because additional treatment was not recommended. Therefore, she argues that there were no true "treatment gaps" because she was medicated throughout the relevant time periods and in compliance with treatment. While the record reflects that surgery was not recommended during the period when these "treatment gaps" occurred, spinal cord stimulation ("SCS") was recommended during at least one "gap." R. 436, 522, 521. The medical records reflect that Dr. Dahlberg recommended SCS to Plaintiff in February of 2011, but Plaintiff "elected just to wait and see how she did over a longer period of time." R. 521. After nineteen months, she decided to proceed with the treatment. R. 521. At any time during the "treatment gaps," Plaintiff also could have visited the pain management specialist for injections. Although Plaintiff testified at the hearing that she only felt 10% pain relief from injections, the ALJ found this testimony inconsistent with the record because Plaintiff reported post-injection improvement to her medical providers on multiple occasions. R. 1017, 1076, 712, 717, 854. In fact, after a four-and-a-half-month "treatment gap," Plaintiff visited her pain specialist "requesting injections." R. 712. This evidence supported the ALJ's conclusion that, "[w]hile the record reflects that the claimant does seek pain management treatment when she is experiencing pain, she is able to go for months without pain management treatment and instead manage her pain with medication." R. 1017. Although Plaintiff may disagree with how the ALJ weighed the medical evidence, this Court will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Additionally, Plaintiff claims that the ALJ ignored evidence of Plaintiff's pain and obesity. However, the ALJ did not ignore Plaintiff's reports of pain or the impact of her obesity on her RFC. The ALJ explicitly noted, "[t]he undersigned is not concluding that [Plaintiff] did not have pain; rather, the undersigned acknowledges the claimant's reports of pain and experiencing good versus bad days." R. 1017. The ALJ thoroughly considered Plaintiff's medical records, including her reports of pain, as well as the "treatment gaps," clinical examinations, and Plaintiff's testimony. R. 1006-1022. After analyzing this evidence, the ALJ concluded that "the record does not support the intensity of the functional limitations [Plaintiff] alleges." R. 1017. Nevertheless, the ALJ limited Plaintiff to sedentary work with additional limitations, "to avoid exacerbations of her back and knee pain." R. 1018. The ALJ also concluded that Plaintiff's obesity "did impact her musculoskeletal impairments" and noted that "the assessed limitations account for potential impact." *Id*. Even if the ALJ did not mention every record of Plaintiff's pain in the decision, "[a]n ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). The ALJ did not ignore "an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).[2]

Plaintiff next argues that the ALJ erred by assigning significant weight to the opinion of

---

[2] Plaintiff also seems to make the argument that the ALJ erred by failing to address failed back syndrome at step 2. At the hearing, the impartial medical expert testified that failed back syndrome is "just another term for the fact that patients didn't get better after they operated on their back." R. 1068. Therefore, based on this expert testimony, failed back syndrome seems properly considered as part of Plaintiff's "history of lumbar spine laminectomy with decompression," which the ALJ did classify as a severe impairment. R. 1006. In fact, Plaintiff even refers in her own brief to "failed back syndrome/post laminectomy syndrome." Even if the ALJ did err by failing to mention failed back syndrome at step 2, she adequately addressed the symptoms of failed back syndrome when determining Plaintiff's RFC, so any error was harmless.

the impartial medical expert who testified at the May 4, 2021 hearing, Dr. Kendrick. She claims that Dr. Kendrick's testimony conflicted with the evidence in the record and that the ALJ did not reconcile these conflicts. The first inaccuracy that Plaintiff points to is Dr. Kendrick's statement that Plaintiff had a good result from a surgery. R. 1062. Plaintiff assumes that Dr. Kendrick was referring to a 2006 microdiscectomy on Plaintiff's back. However, based on the line of questioning, the doctor was clearly referring to the surgery on Plaintiff's shoulder (a right shoulder arthroscopic subacromial decompression) which took place on August 13, 2010. R. 560. The record supported a determination that the surgery had a good result because Plaintiff did not complain of right shoulder pain after that procedure, with the exception of some shoulder pain due to exercising. R. 368, 440, 1654, 1736. Plaintiff also takes issue with Dr. Kendrick's testimony that Plaintiff had "good relief of pain" from injections. R. 1069. However, Dr. Kendrick cited directly to the record for that testimony, specifically quoting treatment notes dated June 30, 2015, in which Dr. Dahlberg wrote that Plaintiff had "profound improvement" in her pain symptoms following a lumbar epidural steroid injection. R. 854. Although Plaintiff testified at the hearing that injections only provided her with minimal relief, the record reflects that Plaintiff often (though not always) reported feeling significant relief after the injections. R. 1017, 1076, 712, 717, 854. Consistent with this evidence, Dr. Kendrick acknowledged that "[p]ain is always variable," and that Plaintiff could still have bad days of pain. R. 1070. Based on his analysis of the record, Dr. Kendrick suggested additional limitations to Plaintiff's RFC which the ALJ included in her decision. The ALJ noted that Dr. Kendrick provided a "comprehensive review of the record," and that Plaintiff's counsel had a full opportunity to cross-examine him at the hearing. The Court finds that pursuant to 20 C.F.R. § 404.1527, the ALJ was entitled to give significant weight to Dr. Kendrick's opinion, after finding his opinion consistent with and supported by the medical record. R. 1021. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1277 (7th Cir. 2022).

Finally, Plaintiff argues that the ALJ erred by failing to include fibromyalgia ("FMS") among Plaintiff's severe medically determinable impairments at step 2. The ALJ found that FMS was a medically determinable impairment but was not severe because Plaintiff "stopped her fibromyalgia medication early in the relevant time period, did not seek further treatment, and provided no explanation for her lack of treatment." R. 1007. This conclusion was supported by substantial evidence in the record. The medical records reflect that Plaintiff was prescribed Lyrica for treatment of her FMS in December 2013 but stopped taking it by February 2015. R. 714, 824. In fact, according to her testimony in 2016, Plaintiff may have stopped taking Lyrica as early as mid-2014. R. 76. Although Plaintiff stopped taking Lyrica, she did take Tramadol. However, she testified that it "do[es] not do anything" for her FMS. R. 1083. Even though her medication was "not helping," Plaintiff did not see an FMS specialist or a rheumatologist. R. 75-76, 1084-1086. She testified that her pain management specialist was treating her FMS but that "[h]e didn't say anything specifically [as to] what he was doing [for the FMS pain]" and never mentioned a treatment for FMS specifically. R. 1085. When asked why she did not try to find a specialist for treatment of her FMS, Plaintiff testified that she had a lot to deal with and finding a treatment for FMS was on the "backburner." R. 1086. Based on the ALJ's review of the medical records and Plaintiff's testimony, the ALJ concluded that Plaintiff's FMS was not severe. R. 1006-1007. The Court finds that the ALJ's conclusion was supported by substantial evidence and affirms the decision. *See Gedatus*, 994 F.3d at 900.[3]

---

[3] Even if the ALJ erred in concluding that Plaintiff's FMS was not severe, any error was harmless because step 2 analysis is a threshold issue. *See Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). In this case, the ALJ found that

## CONCLUSION

The decision below is affirmed. Final judgment will be entered accordingly.

Date: November 6, 2024          ENTER:

_____
United States Magistrate Judge

---

Plaintiff had other severe impairments and proceeded to address the aggregate effect of Plaintiff's impairments, both severe and non-severe, at later steps in her analysis. *See, e.g. Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015). Therefore, any error at step 2 was harmless.